No. 22-1084

# In The
# United States Court of Appeals
## for the Sixth Circuit

---

*Rason Horton,*
> *Petitioner-Appellant,*

*v.*

*George Stephenson,*
> *Respondent-Appellee.*

---

**On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division**

---

**BRIEF OF PETITIONER-APPELLANT
RASON HORTON**

---

Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant
Rason Horton*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Petitioner-Appellant Rason Horton makes the following disclosure:

1.     Mr. Horton is not a subsidiary or affiliate of a publicly-owned corporation; and

2.     There is no publicly-owned corporation, not a party to this appeal, that has a financial interest in the outcome.

Respectfully submitted,

/s/ Frank J. Lawrence_____
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant*
*Rason Horton*

Dated: October 21, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………iv

STATEMENT REGARDING ORAL ARGUMENT……………………………vii

JURISDICTIONAL STATEMENT………………………………………………..1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW………………....2

STATEMENT OF THE CASE…………………………………………………3

     Background and Police Interrogation………………………….................3

     Trial……………………………………………………………………….8

     Direct appeals…………………………………………………………….9

     Horton's Habeas Petition………………………………………………..11

SUMMARY OF ARGUMENT…………………………………………………...13

STANDARD OF REVIEW………………………………………………………13

ARGUMENT……………………………………………………………………...14

I.    Mr. Horton's Rights to Counsel and to Remain Silent Were Violated
During His Custodial Interrogation………………………………………...14

    A.    Legal Standard………………………………………………………14

    B.    The Police Improperly Continued To Interrogate Mr. Horton After He
Unambiguously Asked For A Lawyer………………………………15

    C.    The Violation Was Prejudicial And Requires That Mr. Horton's
Petition Be Granted…………………………………………………21

    D.    The State Court and District Court Misinterpreted Supreme Court
Law………………………………………………………………..22

       1.       The State Court Failed To Follow The Clearly Established Supreme Court Law Of *Edwards* and *Davis*…………………22

       2.       The District Court Misapplied *Edwards* and *Davis*..………...26

E.     The State Court's Decision Also Constitutes An Unreasonable Application Of Edwards and *Davis*…………………………………29

F.     In the Alternative, a Remand for an Evidentiary Hearing Would be Appropriate, since the State Court's Determination of the Facts was Unreasonable……………………………………………………...33

CONCLUSION AND RELIEF REQUESTED…………………………………...35

CERTIFICATE OF COMPLIANCE…………………………………………...36

CERTIFICATE OF SERVICE………………………………………………37

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS………..38

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004)………………………………..19, 27

*Arizona v. Fulminante*, 499 U.S. 279 (1991)…………………………………...21

*Arizona v. Roberson*, 486 U.S. 675 (1988)…………………………………21, 31

*Bush v. Warden, S. Ohio Corr. Facility*, 573 F.App'x 503 (6th Cir. 2014)………19

*Connecticut v. Barrett*, 479 U.S. 523 (1987)………………………………….28, 29

*Cornelison v. Motley*, 395 F. App'x. 268 (6th Cir. 2010)…………………………25

*Davis v. United States*, 512 U.S. 452 (1994)…………………………………*passim*

*Edwards v. Arizona*, 451 U.S. 477 (1981)…………………….…………….*passim*

*Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010)………………………………..20

*Kyger v. Carlton*, 146 F.3d 374 (6th Cir. 1998)…………………………………..19

*Matthews v. Ishee*, 486 F.3d 883 (6th Cir. 2007)…………………………………34

*McKinney v. Hoffner*, 830 F.3d 363 (6th Cir. 2016)……………………………...25

*Michigan v. Harvey,* 494 U.S. 344 (1990)………………………………………...22

*Michigan v. Jackson*, 475 U.S. 625 (1986)……………………………………….22

*Minnick v. Mississippi*, 498 U.S. 146 (1990)…………………………………20, 21

*Miranda v. Arizona,* 384 U.S. 436 (1966)…………………………………*passim*

*Moore v. Berghuis*, 700 F.3d 882 (6th Cir. 2012)………………………...19, 20, 21

*Oregon v. Bradshaw*, 462 U.S. 1039 (1983)……………………………………...15

*People v. Horton*, No. 264604, 2007 Mich. App. LEXIS 87,
2007 WL 127825 (Mich. Ct. App. Jan. 18, 2007)…………………………...9

*People v. Horton*, 478 Mich. 871, 731 N.W.2d 739 (2007)………………………10

*Sawyer v. Hofbauer*, 299 F.3d 605 (6th Cir. 2002)………………………………….34

*Schriro v. Landrigan*, 550 U.S. 465 (2007)……………………………………….34

*Smith v. Illinois*, 469 U.S. 91 (1984)……………………………...18, 24, 25, 27, 31

*Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010)………………………………19, 25

*United States v. Rought*, 11 F.4th 178 (3rd Cir. 2021)…………………………….28

*United States v. Scott*, 693 F.3d 715 (6th Cir. 2012)………………………….......17

*Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003)……………………………....34

*Williams v. Taylor*, 529 U.S. 362 (2000)……………………………...14, 24, 26, 30

*Yenawine v. Motley*, 402 F. App'x 997 (6th Cir. 2010)…………………………..20

## **STATUTES**

28 U.S.C. § 1291……………………………………………………………...1

28 U.S.C. § 1331……………………………………………………………...1

28 U.S.C. § 2253……………………………………………………………...1

28 U.S.C. § 2254…………………………………………………...1, 3, 13, 14, 20, 34

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner-Appellant Rason Horton requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a). Argument would assist the Court in the resolution of this appeal due to the length and complexity of the record. This District Court granted Mr. Horton's application for a certificate of appealability on the issue of whether the trial court erred by admitting into evidence Horton's custodial statements to police that allegedly were taken in violation of his right to remain silent and his right to counsel. The opportunity to address this issue in greater detail to this Court, and to respond to inquiries from this Court, will aid the Court in its decision-making process.

# JURISDICTIONAL STATEMENT

Petitioner-Appellant Rason Angelo Horton seeks a writ of habeas corpus under 28 U.S.C. § 2254.  He timely filed his amended petition in the United States District Court for the Eastern District of Michigan on August 28, 2018.  Am. Pet., RE 21, Page ID # 166-233.   The lower court had jurisdiction pursuant to 28 U.S.C. § 1331.  On January 12, 2022, District Court Judge Paul Borman issued an Opinion and Order denying Horton's petition. Opinion, RE 43, Page ID # 1877-1927.  The District Court granted a certificate of appealability on the alleged violation of Horton's rights to counsel and to remain silent.  *Id.* at Page ID # 1926.   On February 4, 2022, Horton filed a timely Notice of Appeal.  NOA, RE 46, Page ID # 1932-1933.

This Court has jurisdiction over this timely appeal of the District Court's final decision under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Supreme Court precedent holds that when an individual being interrogated articulates a "desire to have counsel present sufficiently clearly such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," police officers must cease interrogating the individual. *Davis v. United States*, 512 U.S. 452, 459 (1994).  Mr. Horton, in response to police questioning, requested counsel.  Police instead continued to interrogate Mr. Horton.  Were Mr. Horton's custodial statements to police taken in violation of his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel?

II.     In the event that this Court does not conclude that Mr. Horton is entitled to a writ of habeas corpus on the existing record, in the alternative, should this Court remand this matter to the District Court to hold an evidentiary hearing?

## STATEMENT OF THE CASE

Petitioner-Appellant Rason Anglo Horton was convicted by a jury of murder in the first degree on June 23, 2005 in the Washtenaw County Circuit Court.  He was sentenced on July 18, 2005 to life without parole in the Michigan Department of Corrections on that charge.  He is also serving sentences for armed robbery, carjacking, and possession of a firearm when committing a felony.[1]  Horton asserted five claims for habeas relief under 28 U.S.C. § 2254 in the lower court. On January 12, 2022, Horton's claims were rejected, Opinion, RE 43. Page ID # 1877-1927, but he was provided a certificate of appealability on Count I of his Petition because "[r]easonable jurists could debate the Court's resolution of Petitioner's first claim regarding the alleged violation of his rights to counsel and to remain silent." *Id.* at Page ID # 1926.

This matter is an appeal from the dismissal of Count I of Horton's lower court petition.

### *Background and Police Interrogation*

Horton was charged with open murder, armed robbery, carjacking, felon-in-possession of a firearm, felony firearm, and two counts of assault with intent to commit murder. The charges arose from a robbery, carjacking, two assaults on

---

[1]    https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=361861 (last visited 10/18/22)

eyewitnesses, and the fatal shooting of a clerk at the BP Amoco gas station on Packard Road in Ann Arbor, Michigan.

Detective David Monroe was the officer in charge of Horton's criminal case. On September 22, 2004, Detective Monroe and Detective Greg Jones flew to New Mexico to interrogate Horton about the events that took place at the Ann Arbor BP Amoco gas station, as well as a separate robbery that took place at a Marathon gas station in Detroit that took place later on the same day as the Ann Arbor incident. Transcript, RE 27-5, Page ID # 449. At that time, Horton was in custody at a detention facility just outside of Albuquerque, New Mexico. Monroe Notes, RE 35-1, Page ID # 1582. The officers spoke to Horton during two sessions: one was in the morning from approximately 9:00am to noon and the other was from about 3:45pm until 9:05pm. *Id.* at Page ID # 1582, 1588, 1589, 1599.

When the Detectives first arrived at the detention facility, they told Horton that they had "spoken with his sister Ladina and that she indicated that he had taken responsibility for the Marathon gas station robbery in the city of Detroit." Tr., RE 27-5, Page ID # 449.[2] In response, Horton stated that he had committed the robbery in Detroit. *Id*. Detective Monroe testified that after this statement, the officers advised Horton of his *Miranda* rights and Horton stated that he wanted to speak with the officers. *Id*. By contrast, Horton testified that he claimed that he

---

[2]     To be clear, the conviction at issue in this habeas appeal stems from the gas station incident that occurred earlier in the day <u>in Ann Arbor, Michigan</u>.

was not advised of his constitutional rights until 20 or 25 minutes after he entered the room and that he asked for an attorney before he was advised of his constitutional rights. *Id.* at Page ID # 481.

According to Detective Monroe, after Horton was advised of his rights, Horton stated that he had spoken with his sister and she was trying to find him a good attorney. *Id*. at Page ID # 451. The officers did not ask any follow up questions about the attorney. *Id*. at Page ID # 472. They continued to question Horton. *Id*. at Page ID # 451. Horton maintained that he did not commit any murder and when Detective Monroe asked him who did commit the murder, Horton responded that "he did not want to give us that information without – until he had spoken with his attorney." *Id.* at Page ID # 451, 473-474. Similarly, when Detective Monroe asked Horton how he happened to take possession of the victim's car, Horton stated that "he didn't want to tell us that until he had a lawyer present or an attorney present." *Id*. at Page ID # 452, 474.

The interview continued and Horton stated that he did not commit the Ann Arbor Amoco gas station robbery and murder, but that he knew who did. *Id*. at Page ID # 451. When Horton was asked about the victim's car that was seen at the Marathon station robbery in Detroit and subsequently found burned in Detroit, and after Horton expressed his desire not to talk about that without counsel, Detective Monroe understood this to be a clear request for a lawyer to be present. *Id.* at Page

ID # 473-474 ("He said he did not want to answer that question without a lawyer present").

The questioning continued on to a few other topics, but Detective Monroe eventually returned to talking with Horton "about him being at the Amoco gas station at the time of the robbery and he indicated he was there" and that while present at the Ann Arbor station he was almost shot. *Id*. at Page ID # 453-454. Horton continued to deny that he murdered anyone and he asked if the detectives could guarantee a prison sentence range in exchange for additional information. *Id*. at Page ID # 454. Horton stated that he was not the only person who was present at the Amoco Ann Arbor gas station incident. *Id*.  In response to further questioning, Horton described the clothing that he wore while in Ann Arbor. *Id*. Horton stated that he had not planned on talking to the detective and that if he had an attorney there, the attorney would tell him not to talk.  Detective Monroe claimed that Horton stated, "But I like you guys" and that he interpreted Horton's remark as willingness to continue talking. *Id*. Page ID # 454-55.

Detective Monroe testified that Horton stated that he would tell the officers everything in exchange for a cigarette.  The officers told him they could take him off of the facility property later to a place where he could smoke. *Id*. at Page ID # 455.  With that understanding, Horton agreed to continue.  The officers continued to question Horton and he stated that "his homie" chased the clerk.  Although

Horton testified that he did not see the shooting, he saw the clerk's body on the street. *Id.* at Page ID # 456. The morning interrogation session ended about noon. *Id*. at Page ID # 458.

Detective Monroe and Detective Jones returned to the facility just before 4:00pm and took Horton to an empty jail facility where he could smoke. *Id.* at Page ID # 458. Horton was not advised of his *Miranda* rights during the afternoon session. *Id.* at Page ID # 458, 477. The interview continued with discussions on various topics including the armed robbery charge, Horton's "homie," possible fingerprints at the crime scene, the gun used during the incident, and whether the detectives thought Horton had killed the gas station clerk in Ann Arbor. *Id.* at Page ID # 458-60. During the afternoon interrogation, Horton again stated "he wanted to talk, talk with his attorney about specifics." *Id.* at Page ID # 460. The detectives, nevertheless, continued the interrogation. *Id.* at Page ID # 460-461. Horton continued to speak with the detectives, but Horton testified that he had felt he had to talk because he was "cornered in" and could not go anywhere. *Id.* at Page ID # 484.

Horton made another reference to an attorney stating he wanted to "see [an] attorney" in order to see what the attorney could simmer up. *Id.* at Page ID # 461. Again, the officers continued to interrogate him. *Id*. Horton asked to use a telephone to call a former girlfriend. After making the call, Horton initially

refused to answer a question as to whether he had shot the clerk, but he subsequently admitted to taking a shot at the clerk. *Id*. at Page ID # 461-62.

Detective Monroe testified that the interview concluded at around 7:30pm. *Id*. at Page ID # 463. Overall, Horton made a specific reference to an attorney numerous times during the interrogation.[3] *Id.* at Page ID 451, 452, 454, 460, 461, 466. Horton testified that he informed Detective Monroe more than five times that he wanted an attorney. *Id.* at Page ID # 481.

Defense counsel in the trial court challenged the admission of Horton's statements. *Id.* at Page ID # 447-448, 490. *See also*, *Id*. at Page ID # 493. The trial court denied Horton's motion to suppress the statements. *Id.* at Page ID # 495.

### *Trial*

The statements that Horton made to Detective Monroe and Detective Jones on September 22, 2004 were provided to the jury. On June 23, 2005, the jury acquitted Horton of the assault charges, but found him guilty of felony murder, armed robbery, carjacking, felon in possession of a firearm, and felony firearm. Trial Tr., RE 27-12, Page ID # 810-811. On July 18, 2005, the trial court sentenced Horton to two years in prison for the felony-firearm conviction, to be

---

[3]     None of the interrogation that took place was audiotaped or videotaped. *Id.* at Page ID # 467. Nor were any written statements taken from Horton. *Id.* at Page ID # 484, 467. The Detectives took their own notes during the interrogation and both detectives subsequently destroyed those notes. *Id.* at Page ID # 464, 484, 486.

followed by concurrent terms of life imprisonment without the possibility of parole for the murder, 25 to 50 years in prison for the armed robbery, 35 to 60 sixty years for the carjacking, and 3 to 71/2 years for being a felon in possession of a firearm. Sentencing Tr., RE 27-13, Page ID # 838; Judgment of Sentence, RE 27-14, Page ID # 1037-1038.

### *Direct Appeals*

On January 18, 2007, the Michigan Court of Appeals rejected Horton's claims relating to the alleged violation of his rights to counsel and to remain silent and it affirmed his convictions in an unpublished decision. *See People v. Horton*, No. 264604, 2007 Mich. App. LEXIS 87, 2007 WL 127825 (Mich. Ct. App. Jan. 18, 2007); RE 27-20, Page ID # 1282-1287. <u>First</u>, the Michigan Court of Appeals stated that its focus centered on an issue of credibility. <u>Second</u>, it found that Horton's requests for counsel were "either in passing", or "they were limited [] invocations." The Court explained:

> There were only two witnesses on this issue, and their testimony conflicted with each other. Defendant testified that he unequivocally invoked his right to counsel, and Detective Jones testified that defendant never made such a request. Clearly, the trial court found Jones's testimony on this point credible and did not believe defendant's claim to the contrary. Given the lack of other evidence to corroborate defendant's claim, and the fact that the trial court is entitled to gauge credibility, there is nothing in the record to give this Court a firm and definite conviction that a mistake was made in the trial court's relevant factual findings. Therefore, the trial court's

factual findings were not clearly erroneous and will not be disturbed. Burrell, supra at 449.

Looking at the rest of the record, it is clear that defendant's references to an attorney were either in passing, such as references about how a good attorney would get him off or would tell him not to answer questions and how his sister was going to get him an attorney, or they were limited to invocations of an attorney before defendant would answer specific questions. And when defendant indicated his refusal to answer a specific question without an attorney, the detectives ceased questioning defendant on that particular question, never bringing up that topic again unless defendant brought it up first. As indicated above, the police are allowed to continue questioning in such cases, so long as they avoid the topics for which defendant had invoked a limited right of counsel, Adams, supra at 233-234, and police may question defendant about a previously foreclosed subject where the defendant himself initiates it. *Edwards v. Arizona*, 451 US 477, 484-485; 101 S. Ct. 1880; 68 L. Ed. 2d 378 (1981).

Further, when detectives asked defendant if he was the shooter in the Ann Arbor robbery, this was not an improper broach of a subject defendant had requested an attorney for, because he claimed a third party had done the shooting and the question he specifically refused to answer sought the third party's name, not whether he was the shooter. Thus, there was nothing improper about the continuing interrogation of defendant by police on issues other than those specific questions defendant said he would not answer without an attorney. Therefore, defendant's Fifth Amendment right was not violated and the trial court properly declined to suppress defendant's admissions to police on that basis.

Horton raised the same claims in the Michigan Supreme Court, but on May 30, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Horton*, 478 Mich. 871, 731 N.W.2d 739 (2007) (table order); RE 27-15, Page ID # 1039.

### *Horton's Habeas Petition*

In 2008, Horton filed his initial habeas corpus petition, RE 1, Page ID # 1-14, and a motion to stay the proceedings, RE 2, Page ID # 15-17.  In his habeas petition he claimed that: (1) the trial court erred when it admitted evidence of his custodial admissions to the police because his admissions were taken in violation of his right to remain silent and his right to counsel; (2) his statement to the police also was involuntary; (3) the trial court erroneously allowed the prosecution to admit evidence of another "bad act"; and (4) the trial court should have ordered a mistrial sua sponte after items that had not been admitted in evidence were given to the jury.  Petition, RE 1, Page ID # 4-9.  The lower court granted a stay and it allowed Horton to pursue various state court claims, which were ultimately all denied.

On August 28, 2018, Horton filed an amended petition for the writ of habeas corpus, Am. Pet., RE 21, Page ID # 166-233, and a motion to lift the stay, Motion, RE 19, Page ID # 161-163.  The lower court granted Horton's motion to lift the stay and it ordered the State to file an answer to the amended petition. Opinion and Order, RE 22, Page ID # 234-238.  The State subsequently filed its answer in opposition to the amended petition and the state-court record, RE 26, Page ID # 245-283, the Rule 5 materials, RE 27, Page ID # 284-1321 and Horton filed a reply, RE 28, Page ID # 1322-1328.

On January 12, 2022, the lower court rejected Horton's requested relief. It denied the five claims at issue in Horton's amended habeas petition. With respect to Horton's first claim – which is the only claim relevant to this appeal – the lower court concluded:

> To summarize, there was no clear and unequivocal request to have an attorney present or to stop all questioning. Petitioner's partial invocation of the right to counsel for specific questions was respected when the detectives turned to other topics. Petitioner waived his right to remain silent and to have counsel present when he demonstrated a willingness to answer subsequent questions on topics not covered by the limited invocation of counsel, knowing that he had a right to stop the questioning. The state appellate court's rejection of Petitioner's claim was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts, and Petitioner is not entitled to relief on his claim.
>
> *  *  *
>
> Reasonable jurists could debate the Court's resolution of Petitioner's first claim regarding the alleged violation of his rights to counsel and to remain silent. The Court, therefore, grants a certificate of appealability on the first habeas claim. The Court declines to grant a certificate of appealability on the remaining claims …

Opinion, RE 43, Page ID # 1912

On February 4, 2022, Horton filed a timely Notice of Appeal and his appeal was docketed in this Court, RE 46, Page ID # 1932-1933. Horton filed a motion in this Court to expand the issues on appeal, but on June 30, 2022, Circuit Judge Julia Smith Gibbons denied Horton's motion to expand the Certificate of Appealability. Order, 6th Cir. No. 22-1084, RE #5.

12

## SUMMARY OF ARGUMENT

The Michigan Court of Appeals' rejection of Horton's claim was contrary to Supreme Court precedent, it was an unreasonable application of Supreme Court precedent, and it constituted an unreasonable determination of the facts. The centerpiece of the prosecution's case against Horton were inculpatory statements that Horton made to police on September 22, 2004 under continued interrogation after he had made a clear request for counsel, which the trial court admitted in violation of his Fifth and Sixth Amendments rights. Despite Horton's request for counsel, the police officers did not stop their interrogation and they continued. Horton's requests for counsel were not "limited invocations" or simply made in passing. His requests for counsel went unheeded. The introduction of Horton's inculpatory admissions at trial, after his requests for counsel went unheeded, violated right to remain silent and his right to counsel. A writ of habeas corpus should be issued.

## STANDARD OF REVIEW

In an appeal from a petition for a writ of habeas corpus, this Court reviews a district court's legal conclusions *de novo* and factual findings for clear error. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (*en banc*). This petition was filed under 28 U.S.C. § 2254, which was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under the AEDPA, habeas relief is to be granted where a state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "unreasonably applies [Supreme Court law] to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 405–06, 413 (2000) (interpreting 28 U.S.C. § 2254(d)). In determining if there is an "unreasonable application," this Court must examine "whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## ARGUMENT

I.      Mr. Horton's Rights to Counsel and to Remain Silent Were Violated During His Custodial Interrogation.

     A.      Legal Standard.

In *Miranda v. Arizona*, the Supreme Court held that the prohibition against self-incrimination in the Fifth and Fourteenth Amendments requires that suspects undergoing custodial interrogation be informed of their right to remain silent and their right to have an attorney present during questioning. 384 U.S. 436, 478–479 (1966). The Court further held that police questioning "must cease" if the accused invokes his or her right to remain silent or requests an attorney. *Id*. at 473–474.

Whether a suspect has invoked his or her right to counsel is an "objective inquiry" into whether the suspect "unambiguously request[ed] counsel." *Davis v. United States*, 512 U.S. 452, 459 (1994). Under *Davis*, a suspect must "articulate

his desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

Supreme Court precedent holds that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). Once an accused invokes his right to have counsel present, interrogation by authorities must cease "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–485. Such a waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *Id.* at 483–484.

As the Supreme Court has explained, *Edwards* created a "prophylactic rule [] designed to protect an accused in police custody from being badgered by police officers." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983).

     B.     The Police Improperly Continued To Interrogate Horton After He Unambiguously Asked For A Lawyer.

During the morning session of questioning, Horton invoked his right to counsel on numerous occasions during the interrogation. The officers left the correctional facility at about noon that day. Tr., RE 27-5, Page ID # 449. They

15

returned about four hours later, at 4:00pm, to question Horton again. *Id*. At this time, the detectives transported Horton to an empty correctional facility where he could smoke during the interrogation. *Id*. at Page ID # 458. He was not advised of his *Miranda* rights during the afternoon session. *Id*. at Page ID # 458, 477.

During the afternoon interrogation, Horton again stated he wanted to speak to his attorney. *Id*., Page ID # 460. The officers, again, ignored this request and continued to interrogate him. *Id*. at Page ID # 460-461. Horton made another reference to an attorney stating he wanted to "see [an] attorney." *Id*. at Page ID # 461. The officers continued to interrogate him. *Id*. The interview concluded at around 7:30pm that evening. *Id*. at Page ID # 463. Overall, Horton invoked his right to counsel multiple times during the interrogation. *Id.* at Page ID # 451, 452, 454, 460, 461, 466. In addition, the detectives knew prior to the interview that Horton's sister was looking for an attorney. *Id.* at Page ID # 466. The officers had spoken to Horton's sister prior to the interrogation taking place. *Id*.

*Miranda* made it clear that if the accused "indicates in any manner and at any stage of the process that he [or she] wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444–445. And the Supreme Court later emphasized in *Edwards*, once a request for counsel has been made, an interrogation may not continue until either counsel is made available or the suspect

initiates further communication sufficient to waive the right to counsel. 451 U.S. at 484–85 (1981).

The timing of Horton's statements demonstrated that he was invoking his right to remain silent and to speak to his attorney.   Under *Miranda, Edwards and Davis*, the police interrogation of Horton therefore needed to end.   The police, however, persisted in the interrogation, and later obtained inculpatory statements by Horton that the prosecution made the centerpiece of its case against him at trial. The admission of these statements violated Horton's Fifth Amendment rights under Supreme Court precedent.

This Court's decision in *United States v. Scott*, 693 F.3d 715 (6th Cir. 2012) is instructive.   In *Scott*, this Court held that a petitioner's written response of "no" to a question regarding his desire to speak with police "articulate[d] his desire to have counsel present sufficiently clearly." *Id*. at 719 (*quoting Davis*, 512 U.S. at 459).   There, the petitioner was handed an Advice of Rights form, which included a *Miranda* warning. *Id*. at 717.   Below the warning were two questions, one of which was: "Having these rights in mind, do you wish to talk to us now?"   The petitioner's answer to this question was "no." *Id*. Petitioner's counsel was not called and the petitioner later gave an inculpatory statement.   This Court reasoned that because the *Miranda* warning included a reference to the right to counsel, the

petitioner's expressed desire not to speak with the police constituted a request for counsel. *See Id*. at 719–720.

Likewise here, Horton indicated his desire for counsel when he indicated that his sister was trying to find him an attorney. Even if this were not considered to be an unequivocal request for counsel, when taken alone, it provides context for Horton's unambiguous request in the chain of events: the officer's testimony was that Horton did not want to reveal the identity of the person who committed the Ann Arbor gas station incident without speaking to an attorney. Tr., RE 27-5, Page ID # 473-474.[4]

Telling a police officer that he did not want to reveal the identity of the person who committed the Ann Arbor gas station incident without speaking to an attorney constitutes a quintessentially clear request for counsel sufficient to trigger an accused's right to counsel. In fact, the Supreme Court has held that less direct statements constitute clear invocations of the right to counsel. *See, e.g., Edwards*, 451 U.S. at 479–80 (holding statement "I want an attorney before making a deal" triggered *Miranda* rights); *Smith v. Illinois*, 469 U.S. 91, 97 (1984) (holding

---

[4]    As discussed in section I.F. of this brief, *infra* at p.34, the state court unreasonably determined the facts when it found that Horton was referring to a third party when he stated that he did not want to disclose the identity of the murderer without speaking to counsel. COA Opinion, RE 27-20 at Page ID # 1283. The third party, i.e., Horton's "homie," came up later in the interview. Monroe Notes, RE 35-1, Page ID # 1586-1590, 1595. At this particular point during the interview, Horton was *referring to himself*.

statement "Uh, yeah, I'd like to do that" upon learning of the right to counsel was unambiguous). This Court has also held less clear statements to be sufficient to invoke the right to counsel. *See, e.g., Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012) ("Moore invoked his constitutional right to counsel by requesting that the police officer call his attorney's phone number."); *Kyger v. Carlton*, 146 F.3d 374, 376 (6th Cir. 1998) ("I'd just as soon have an attorney [']cause, you know— ya'll say there's been a shooting involved and that's a serious charge"); *see also Bush v. Warden, S. Ohio Corr. Facility*, 573 F.App'x 503, 504 (6th Cir. 2014) (finding statement: "Can I get a lawyer, my man?" an unambiguous request for counsel). No reasonable police officer could have concluded otherwise. *E.g., Tolliver v. Sheets*, 594 F.3d 900, 923 (6th Cir. 2010) (finding state court unreasonably applied *Edwards* and *Davis* in concluding that the following statement was not a request for counsel: "All right. Wait. Stop talking right now. Find me someplace where I can be by myself, so I don't have to interact with other people right now until I can see my attorney").

And Horton was specific:  he identified the lawyer as being the one who his sister was currently trying to locate for him. Such specificity "corroborate[s] the unequivocal nature of that request." *Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004) ("nam[ing] the specific individual with whom he wanted to speak[,] . . . corroborate[d] the unequivocal nature of that request"), *abrogated on other*

*grounds*, *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010); *Moore*, 700 F.3d at 887 ("[A]fter being taken into custody, Moore invoked his constitutional right to counsel by requesting that the police officer call his attorney's phone number."); *see also Yenawine v. Motley*, 402 F. App'x 997, 998 (6th Cir. 2010) (*per curiam*) ("Yenawine told police officers, 'I might need to speak with my lawyer about whether I should talk with you.' Yenawine then named his attorney and produced his attorney's business card, which included printed text that stated, among other things, that he would not answer questions without his lawyer present."). Next, in response to Detective Monroe asking him who committed the murder, Horton responded that "he did not want to give us that information without – until he had spoken with his attorney." Tr., RE 27-5*,* Page ID # 451, 473-474. That question – the identity of the murderer – was "the most important answer" that Detective Monroe wanted. *Id.* at Page ID # 473. Likewise, when Detective Monroe asked Horton how he happened to take possession of the victim's car, Horton stated that "he didn't want to tell us that until he had a lawyer present or an attorney present." *Id*. at Page ID # 474, 452.

Because Horton made an unequivocal request for counsel, the interrogation should have stopped until his attorney was present. *Davis*, 512 U.S. 458 (after the right to counsel has been asserted, a suspect "cannot be questioned regarding any offense until an attorney is actually present.") (*citing Minnick v. Mississippi*, 498

U.S. 146 (1990); *Arizona v. Roberson*, 486 U.S. 675 (1988)).  The detectives knew that Horton's sister was retaining counsel for him and Horton told the officers that he wanted to talk to an attorney multiple times.  Tr., RE 27-5, Page ID # 466, 473-474.  Horton's statements should not have been admitted.  The continuation of the interrogation was improper.

> C.    The Violation Was Prejudicial and Requires That Mr. Horton's Petition Be Granted.

All of the inculpatory statements relating to the Ann Arbor Amoco gas station robbery were made by Horton *following his request for counsel*.  The improper presentation of these statements to the jury was exceedingly harmful to Horton's defense and warrants reversal of the state court's decision.  As the Supreme Court has explained, "[a] confession is like no other evidence.  Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct.  Certainly, confessions have profound impact on the jury[.]'" *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991); *see also Moore*, 700 F.3d at 890 (finding admission of custodial statement not harmless error and granting petition for writ of habeas corpus).  Here, the statements from the interrogation were the focus of the prosecution's case against Horton and in the

state court's decision to uphold the conviction. *See Michigan v. Harvey, 494 U.S. 344, 345 (1990), citing Michigan v. Jackson*, 475 U.S. 625 (1986) (once a defendant invokes his Sixth Amendment right to counsel, any waiver of that right—even if voluntary, knowing, and intelligent under traditional standards—is presumed invalid if given in a police-initiated discussion.).  It is an understatement to say that the inculpatory statements at issue here were "prejudicial" because those statements were the centerpiece of the prosecution's case against him.

D.    The State Court and District Court Misinterpreted Supreme Court Law.

1.    The State Court Failed To Follow The Clearly Established Supreme Court Law Of *Edwards and Davis*.

In *Edwards,* 451 U.S. at 484-85, the Supreme Court set forth the following bright-line rule with regard to continued questioning when a suspect invokes his right to counsel:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.  We further hold that an accused...having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police.

The central issue here is not one of credibility, as addressed in the Opinion by the Michigan Court of Appeals, but rather one regarding the strengths of the

requests for an attorney that the detectives stated Horton made. When the detectives asked Horton "how he came into possession of that car," his response was that he "didn't want to tell us until he had a lawyer present or an attorney present." Tr., RE 27-5, Page ID # 452, 473-474.  At that point, it was the obligation of the detectives to cease questioning. *Edwards*. 451 US at 484-85.  However, the officers continued to question Horton, even though they understood his words to be a clear request for a lawyer. Tr., RE 27-5, Page ID # 474.  After Horton would make such a request, the officers would just change the topic. *Id.*, Page ID # 452-454 and 474.  This scenario occurred multiple times. *Id.*, Page ID # 454, 460.

The state court cited *Edwards*, but not *Davis*.  It failed to apply *Davis*' rule that a request for counsel need only be "sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.  Instead, the state court applied a different, incorrect legal standard, finding that Horton's statements were properly admitted because Horton's request for counsel involved his "refus[al] to answer about the third party's name, not whether he was the shooter."  The *Davis* standard is explicitly an objective standard, that the suspect "must unambiguously request counsel" and articulate a desire to have counsel "sufficiently clear[] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.  Horton did so.  Yet the state

court applied an unduly strict standard of whether statements requesting counsel applied to the specific questions that later incriminated Horton.

After a custodial interviewee "express[es] his desire to deal with the police . . . through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him." *Edwards,* 451 U.S. at 484. Once a request for counsel has been made, there are two parts to the *Edwards* analysis. First, before any further statements are admissible, it must be determined that the accused initiated further discussions with the police. Second, even after such initiation, it must further be determined that the accused knowingly and intelligently waived the right invoked. *Smith,* 469 U.S. at 95. In this case, the officers' technique of changing the subject of questioning when Horton would invoke his right to counsel does not amount to Horton initiating further discussions with the police. *Id.*

A decision is contrary to clearly established federal law under AEDPA when, as here, it is "diametrically different," "opposite in character or nature," or "mutually opposed" from the relevant precedent. *Williams*, 529 U.S. at 405–06. In *Williams*, the Court explained, by way of example, that if a state court were to reject an ineffective assistance of counsel claim on grounds that the prisoner had failed to establish "by a preponderance of the evidence" that the result of the proceeding would have been different, this would be contrary to clearly established

precedent that a prisoner need only demonstrate a "reasonable probability" of a different result. *Id*. The Supreme Court's standard, however, requires only that a reasonable police officer would have understood the suspect to be requesting an attorney. That is what happened here.

And even if Horton's particular responses could be characterized as equivocal in isolation, his overall exchange with the police illustrated unambiguous requests that should have been met with silence from the officers. *Edwards*, 451 U.S. at 484-85. What took place in this case was the exact type of subtle overreach that rule of *Edwards* is designed to prevent. *Smith*, 469 U.S. at 95. *See also Cornelison v. Motley*, 395 F. App'x. 268, 274 (6th Cir. 2010). An interviewee "need not speak with the discrimination of an Oxford don" to successfully invoke his right to counsel; he need only "articulate his desire . . . sufficiently clearly that a reasonable police officer . . . would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 457 (*quoting id*. at 476 (Souter, J., concurring) (internal quotations omitted)); *Tolliver,* 594 F.3d at 922. Thus, when a reasonable officer would understand that a subject of a custodial interrogation was requesting an attorney, the officer conducting the interrogation must immediately stop asking questions. *See Davis*, 512 U.S. at 459; *Solem v. Stumes*, 465 U.S. 638, 646 (1984); *McKinney v. Hoffner*, 830 F.3d 363, 370 (6th Cir. 2016). The state court's misinterpretation of governing law is another, independent reason for granting

Horton's petition. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 405–06.  The state court failed to acknowledge that the officers engaged in precisely the type of post-invocation inquisition that the rule of *Edwards* is designed to prevent.   See Bradshaw, 462 U.S. at 1044.

### 2.    The District Court Misapplied *Edwards* and *Davis*

The District Court also grounded its ruling on an erroneous interpretation of Supreme Court precedent. In its decision, the lower court did not find that the words of Horton's statement were ambiguous.  Rather, the lower court, like the Michigan Court of Appeals, found that Horton's statements about obtaining counsel were limited invocations of the right to counsel and the right to remain silent or simply made in passing.  Opinion, RE 43, Page ID # 1910.  In this respect, the lower court stated:

> During the interviews that followed, Petitioner never stated that he wanted all questioning to cease, that he did not want to speak with the detectives, or that he wanted a lawyer to be present. See 6/3/05 Walker Hr'g Tr. at p. 161 (ECF No. 27-5, PageID.486) (Detective Greg Jones' testimony). Petitioner did make some references to an attorney, but according to Detective Jones, Petitioner said that he would rather not talk about a given topic until a lawyer was present or that he did not want to provide certain information until after he spoke with his attorney. See id. at p. 162 (ECF No. 27-5, PageID.486); see also pp. 21, 23, 108-11 (ECF No. 27-5, PageID.451-52, 473-74) (Detective Monroe's testimony that Petitioner did not want to tell the detectives who committed the murder or how he came to be in possession of the victim's car until he spoke to his attorney).

Opinion, RE 43, Page ID # 1910.[5]

While the lower court may be correct that Horton never stated that he wanted "all questioning to cease," uttering such words would not be dispositive here. Moreover, the lower court opined that Horton "never stated … that he wanted a lawyer to be present," but a request to have *the physical "presence"* of an attorney during questioning not is dispositive, either. The important point is that Horton stated that he did not want to provide the identity of the murderer "until he had spoken with his attorney" and that is all that the aforementioned case law requires. RE 27-5 at Page ID # 451, 473-474.

Horton's argument to the lower court was never that a mere reference to an attorney is a sufficient invocation of counsel. Rather, Horton has consistently asserted that his request for counsel was unequivocal. Horton's reference to a specific attorney (the one his sister is hiring for him) and his statement that he "didn't want to tell us [how he came into possession of the victim's car] until he had a lawyer present or an attorney present," is evidence that further "corroborate[s] the unequivocal nature" of the request itself. *Abela,* 380 F.3d at

---

[5] If the Michigan Court of Appeals was trying to use the "in passing" characterization – which was seemingly adopted by the lower court – to equate to some form of ambiguity, the Supreme Court has held that courts may not use a suspect's "subsequent responses to continued police questioning" to render earlier clear statements ambiguous. *Smith,* 469 U.S. at 97 (1984) (emphasis omitted).

926.  The lower court erred in relegating Horton's repeated requests for counsel as merely "some references to an attorney."

The lower court relied upon the United States Court of Appeals for the Third Circuit's decision in *United States v. Rought*, 11 F.4th 178, 187 (3rd Cir. 2021) for the proposition that "not all invocations of the right to counsel reflect a desire to deal with the police only through counsel."  Opinion, RE 43, Page ID # 1909.  In *Rought*, the Third Circuit held:

> After a limited invocation, interrogation can continue on topics not covered by the invocation.  If the suspect, without prompting from law enforcement, then voluntarily reinitiates discussion of a covered topic and waives [his] previously invoked rights, it is quite consistent with the Fifth Amendment for the suspect's statements about a covered topic to be admissible at trial.

*Id.* at 183 (quotation omitted).

*Rought* is inapposite to Horton's circumstances.  Horton did not "voluntarily reinitiate" a discussion about the identity of the murderer or the driver of the victim's vehicle, equating to a waiver of his rights.  Detective Monroe was the one who kept circling back after switching topics various times.  *Rought* is also inapplicable because the Supreme Court authority that the Third Circuit relied upon, *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987), addressed a different type of situation.  In *Barrett*, the respondent's invocation of his right to counsel was limited by its terms *to the making of written statements*, and did not prohibit all further discussion with police. *Id.* at 525-527.  The Supreme Court held that

requests for counsel must be given broad, all-inclusive effect only when the defendant's words, understood as ordinary people would understand them, are ambiguous. *Id.* at 529. Later, in *Davis*, the Supreme Court reviewed *Barrett* and it "noted the varying approaches the lower courts have adopted with respect to ambiguous or equivocal references to counsel during custodial interrogation." The Supreme Court resolved the matter by holding that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning" *Davis*, 512 U.S. at 459 (emphasis in original). In Horton's case, by contrast, Detective Monroe understood Horton's request for counsel to be clear. Tr., RE Page ID # 451, 472-474.

The lower court erred in applying an exception to the general rule that if a suspect indicates at any stage of the interrogation that he wishes to have an attorney, there can be no questioning. *Miranda*, 384 U.S. at 444. The lower court erred in not finding that these rights must be scrupulously honored and such statements obtained in violation may not be used in the prosecution. *Id.* at 444 and 479.

E.    The State Court's Decision Also Constitutes an Unreasonable Application of *Edwards* and *Davis*.

Beyond applying an incorrect legal standard, the state court's decision reflects an unreasonable application of *Edwards* and *Davis*. *See Williams*, 529 U.S. at 405–06 (habeas relief to be granted where state court "applies a rule that contradicts the governing [Supreme Court] law."). The Michigan Court of Appeals concluded that Horton's statements were not a sufficient invocation of counsel by reasoning that Horton had engaged *in limited requests* for an attorney. As described below, the Court of Appeals unreasonably applied Supreme Court precedent and this misapplication is an independent reason to grant Horton's petition.

First, the Michigan Court of Appeals erred in failing to acknowledge the similarity between Horton and the petitioner in *Edwards*. In *Edwards*, although the accused initially waived his *Miranda* rights and answered some initial questions, he then asserted he wanted to speak to an attorney. At that point, the interrogation ceased but resumed the next day after, again, reading the *Miranda* rights. Mr. Edwards then agreed to speak to the officers, and he made an oral waiver of his right to counsel. His confession was later admitted at trial. On review, the United States Supreme Court held the purported waiver of the right to counsel at the second interrogation was constitutionally invalid. The Court cited the language in *Miranda* to the effect that once the accused asserts the right to silence or to counsel, all questioning must cease until an attorney is present. The

Court found this requirement cannot be overcome by an argument the accused later agreed to speak without counsel:

> We now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484.

This rule has been followed in several subsequent decisions from the United States Supreme Court. For example, in *Roberson*, 486 U.S. 675, the Court held that no exception to *Edwards* exists where the police want to re-interrogate an accused about an offense different than the offense in question during the initial interrogation:

> [t]he Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect. *Id.*, 486 U.S. at 681.

In *Smith*, the Supreme Court addressed a request with similar colloquial language at the beginning of the statement. During questioning, the petitioner in *Smith* said "[u]h, yeah. I'd like to do that" upon learning that he had a right to consult with an attorney. 469 U.S. at 93 (emphasis added). Instead of terminating

the interrogation, the officers proceeded to finish reading the petitioner his *Miranda* rights and then pressured him to answer their questions. *Id*.  He then provided an inculpatory statement.  In its analysis, the Supreme Court noted that "[n]either the State nor the courts below, for example, have pointed to anything [petitioner] previously had said that might cast doubt on the meaning of his statement 'I'd like to do that' upon learning that he had the right to his counsel's presence." *Id*. at 96.  "Nor have they pointed to anything inherent in the nature of Smith's actual request for counsel that reasonably would have suggested equivocation." *Id.* at 96–97.  The Court then stated:

> As Justice Simon noted in his dissent below, "with the possible exception of the word 'uh' the defendant's statement in this case was neither indecisive nor ambiguous: 'Uh, yeah, I'd like to do that.'"

*Id*. at 97 (citation omitted).

Likewise here, the statements of Horton do not equate into a limited invocation of counsel that the state court's decision attempts to portray.  Horton's ultimate request was clear:  his sister was locating counsel for him and he desired counsel before discussing who committed the Ann Arbor gas station robbery and how he came into possession of the victim's car.  Statements made by the officer indicate that he understood that Horton wanted to speak with a lawyer. Tr., RE 27-5, Page ID # 451, 472-474 ("He said he did not want to answer that question without a lawyer present").  Notably, the officers did not ask any follow-up

questions in regard to his sister finding him an attorney. *Id*. at Page ID # 472. *See Davis*, 512 U.S. at 459 (invocation requires expression of "desire to have counsel present sufficiently clear[] such that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.").

For these reasons, the state court's decision also rests on an unreasonable application of clearly established Supreme Court law.  Horton's petition should be granted for this additional reason.

F.    In the Alternative, a Remand for an Evidentiary Hearing Would be Appropriate, since the State Court's Determination of the Facts was Unreasonable.

The state court's decision put the chronological sequence of events in the wrong order, resulting in an unreasonable determination of the facts.  According to the Michigan Court of Appeals, the subject of whether Horton was the shooter of the Ann Arbor robbery was not off limits because Horton "claimed a third party had done the shooting and the question he specifically refused to answer sought the third party's name, not whether he was the shooter."  COA Opinion, RE 27-20 at Page ID # 1283.  However, in point of fact, Horton's mention of the third-party (his "homie") did not come up until much later during his police interrogation. When Detective Monroe asked Horton who did commit the murder early in the interrogation (soon after *Miranda* warnings were given), and when Horton responded that "he did not want to give us that information without – until he had

spoken with his attorney," Tr., RE 27-5, Page ID # 451, 473-474, Horton was referring to himself, not any third party. *See also*, Monroe Notes, RE 35-1, Page ID # 1583. The story about the "third party," his so-called "homie," did not even enter the conversation until much deeper into the interrogation. *Id*. at Page ID # 1586-1590, 1595. *See also*, Tr., RE 27-5 at Page ID # 455-457, 472-474.

A careful review of the above-referenced facts reveals that the state court's "presumptively correct" factual findings are rebutted by clear and convincing evidence and do not have support in the record. *See, Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007), quoting 28 U.S.C. 2254(e)(1). At a minimum, this Court should remand this matter to the lower court for further factual development of the above-referenced sequence of events. "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Albeit, under the provisions of the Antiterrorism and Effective Death Penalty Act, evidentiary hearings are not mandatory in habeas cases, *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003), this case presents a unique exception that does merit further factual development. This is because Horton alleged "sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002).

34

Although Horton has presented sufficient grounds in this brief for the issuance of a writ of habeas corpus, if this Court is unwilling to grant that relief, a remand for an evidentiary hearing would be just under the circumstances.

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, this Court should reverse the lower court's decision to deny Horton a petition for writ of habeas corpus. The writ should be issued. In the alternative, a remand for an evidentiary hearing is respectfully requested.

Respectfully submitted,

/s/ Frank J. Lawrence_____
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant*
*Rason Horton*

Dated: October 21, 2022

# CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type  volume limitations of the Sixth Circuit Rule 32(a)(7)(B).  This brief has been prepared in proportional typeface using Times New Roman 14-point font.  The brief, including headers and footnotes, contains 9,252 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words.  The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Respectfully submitted,

/s/ Frank J. Lawrence_____
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant*
*Rason Horton*

Dated: October 21, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court using the CM/ECF System. The CM/ECF System will serve a copy of this brief upon opposing counsel, Ms. Andrea M. Christensen-Brown, at her designed email address: christensena1@michigan.gov.

Respectfully submitted,

/s/ Frank J. Lawrence_____
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant*
*Rason Horton*

Dated: October 21, 2022

**ADDENDUM**
**PETITIONER'S DESIGNATION**
**OF RECORD ON APPEAL**

Pursuant to 6 Cir R 30(b), Appellant Rason Horton hereby designates the

following filings in the District Court as the pertinent Record on Appeal:

| RECORD ENTRY and PG ID RANGE | | | DESCRIPTION OF ENTRY | DATE FILED |
|---|---|---|---|---|
| RE 1 | # | 1-14 | Petition for Writ | 7/1/2008 |
| RE 21 | # | 166-233 | Amended Petition | 8/28/2018 |
| RE 22 | # | 234-238 | Opinion and Order | 12/28/2018 |
| RE 26 | # | 245-283 | Response to Petition | 6/27/2019 |
| RE 27-5 | # | 446-495 | Walker Hearing Trans. | 6/27/2019 |
| RE 27-12 | # | 808-817 | Jury Trial, Vol. 6 | 6/27/2019 |
| RE 27-13 | # | 818-842 | Sentencing Trans. | 6/27/2019 |
| RE 27-14 | # | 1037-1038 | Judgment of Sentence | 6/27/2019 |
| RE 27-20 | # | 1282-1287 | State Court Decision | 6/27/2019 |
| RE 28 | # | 1322-1328 | Reply to Response | 8/9/2019 |
| RE 35-1 | # | 1582-1599 | Police Report (Interview) | 4/2/2021 |
| RE 43 | # | 1877-1927 | Opinion and Order | 1/12/2022 |
| RE 46 | # | 1932-1933 | Notice of Appeal | 2/4/2022 |