No. 22-1084

# In The
# United States Court of Appeals
## for the Sixth Circuit

───────────────────────────

*Rason Horton,*
                    *Petitioner-Appellant,*

    v.

*George Stephenson,*
                    *Respondent-Appellee.*

───────────────────────────

**On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division**

───────────────────────────

**REPLY BRIEF
OF PETITIONER-APPELLANT RASON HORTON**

───────────────────────────

                                Frank J. Lawrence, DC# 1048420
                                Law Office of Frank Lawrence
                                941 Westview Road
                                Bloomfield Hills, MI  48304
                                (248) 722-2560

                                *Counsel for Petitioner-Appellant
                                Rason Horton*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………...iii

ARGUMENT……………………………………………………………………......1

CONCLUSION AND RELIEF REQUESTED………………………………….....8

CERTIFICATE OF COMPLIANCE……………………………………………....9

CERTIFICATE OF SERVICE……………………………………………………10

# TABLE OF AUTHORITIES

**CASES**

*Connecticut v. Barrett*, 479 U.S. 523 (1987)……………………………………….2, 3, 6

*Cullen v. Pinholster*, 563 U.S. 170 (2011)……………………………………………7

*Davis v. United States*, 512 U.S. 452 (1994)……………………………………….3

*Edwards v. Arizona*, 451 U.S. 477 (1981)……………………..…………...1, 2, 5

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)…………...2

*Michigan v. Jackson*, 475 U.S. 625 (1986)……………………………………...2

*Minnick v. Mississippi*, 498 U.S. 146 (1990)…………………………………….2

*Miranda v. Arizona,* 384 U.S. 436 (1966)…………………………………….2, 6

*Roberson, Arizona v. Roberson*, 486 U.S. 675 (1988)…………………………..4

*Smith v. Illinois*, 469 U.S. 91 (1984)………………………….....................2, 3, 4

**STATUTES**

28 U.S.C. § 2106……………………………………………………………………...8

28 U.S.C. § 2254(d)(1)……………………………………………………………..7

28 U.S.C. § 2254(e)(2)……………………………………………………………..7

**OTHER**

Rules Governing § 2254 Cases, Rule 6(a)……………………………………….7

Pages 32-39 of Appellee's brief articulate the "seven occasions throughout the interview" that Appellant Rason Horton "mentioned an attorney." Focusing for a moment on just the first two instances, Horton is able to establish that he unambiguously invoked his right to counsel *at the beginning of questioning*, such that the bright line rule of *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981) applies. Horton indicated to the police that his sister was performing the task of finding him a good lawyer (mention #1), R. 27-5, Tr. at 10, Page.ID# 451, and that "he did not want to [provide information about the identity of the murderer] … until he had spoke to *his attorney*." (R. 27-5, Tr. at 21, PageID# 451) (emphasis added) (mention #2). In other words, "his attorney," was identified early on as the individual who Horton's sister was simultaneously trying to hire. Under *Edwards*, at that moment, all questioning should have stopped, *Edwards*, 451 U.S. at 484-485, because the identity of the murderer was "the most important answer" sought. R. 27-5, Tr. at Page ID # 473.

After acknowledging the above two instances where Horton mentioned counsel, Appellee's brief spends a great deal of time arguing that the next five instances where Horton mentioned counsel are not helpful to his cause. This line of argument is a red herring because subsequent statements made during further interrogation cannot be used to limit or cast doubt as to the validity of Horton's prior invocation of his right to counsel. Doing so runs afoul of the Supreme

1

Court's ruling in *Smith v. Illinois* 469 U.S. 91, 100, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) that a suspect's post-request responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself. Any "[d]oubts must be resolved in favor of protecting the constitutional claim," *Michigan v. Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409, and courts must " 'indulge every reasonable presumption against waiver of fundamental constitutional rights,' " *Id.* (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The courts must also "give a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Jackson*, 475 U.S. at 633. Resolving any doubts in favor of the conclusion that the suspect did not intend any waiver of his right to consult counsel, the Court in *Edwards* ruled that the suspect's statement, "I want an attorney before making a deal," 451 U.S. at 479, 101 S.Ct. at 1882, was a sufficient invocation of his Miranda rights to require that all questioning cease, *see* 451 U.S. at 487. Similarly, in *Minnick v. Mississippi*, 498 U.S. 146, 148-149 (1990), in which the suspect said he would make a more complete statement when his lawyer was present, the Court ruled that he had sufficiently invoked his right to counsel to prevent interim questioning by the authorities.

Accordingly, contrary to the central argument in Appellee's brief, this case is governed by *Edwards v. Arizona*, 451 U.S. 477 (1981) not *Connecticut v.*

2

*Barrett*, 479 U.S. 523 (1987). The facts here do not meet the Supreme Court's standard established in *Barrett*, where the defendant expressly told the police three times that "he was willing to talk about [the incident] verbally but he did not want to put anything in writing until his attorney came." 479 U.S. at 526, 107 S.Ct. at 830. In its ruling, the Supreme Court specifically acknowledged such by finding that Barrett's limited requests for counsel "were accompanied by affirmative announcements of his willingness to speak with the authorities," and that "[t]he fact that officials took the opportunity provided by Barrett to obtain an oral confession is quite consistent with the Fifth Amendment." 479 U.S. at 528, 107 S.Ct. at 832. To be clear, "a suspect need not speak with the discrimination of an Oxford don" to receive the benefits of his right to counsel. *Davis v. United States*, 512 U.S. 452 (1994) (internal quotation marks omitted). It is enough for the individual to communicate something that, under an objective standard, "can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* In assessing such communications, courts are to give a broad, rather than a narrow, interpretation to a defendant's request for counsel. *Barrett*, 479 U.S. at 529.

And not every word in an individual's invocation need be decisive or unambiguous for the request to be deemed valid. *See, e.g., Smith,* 469 U.S. at 96-

3

97 (1984) (per curiam) (finding statement "[u]h, yeah, I'd like to do that" to be unambiguous invocation of right to counsel).

The Michigan Court of Appeals unreasonably determined the facts when it failed to give proper weight to the fact that the identity of the murderer was "the most important answer" sought and Horton unambiguously invoked his right to counsel in response to that early line of questioning.  That topic formed the epicenter for the entire interrogation, yet the state court's decision made no mention of this critical point.  The state court's focus on a "limited invocation" based upon Horton's other responses was unreasonable because the officers' efforts to bring up other topics that were tangential to the central topic were off limits by that point in time.  As the Supreme Court explained in *Roberson, Arizona v. Roberson*, 486 U.S. 675, 683, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988), once counsel has been requested, a presumption arises that the suspect "considers himself unable to deal with the pressures of custodial interrogation without legal assistance," and that presumption "does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation."  In point of fact, the decision of the Michigan Court of Appeals is in direct conflict with Supreme Court precedent that holds "An accused...having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to

4

him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85.

Both Appellee and the Michigan Court of Appeals argue that Horton's invocation of the right to counsel was limited to the identity of a third-party "homie" that Horton identified during the interrogation. They argue that the identity of this so-called "third party" was solely what was off limits after Horton's invocation to counsel. *See e.g.*, Appl's brief, p. 35. Not true. The problem with that argument is that Horton did not mention a "homie" until later in the interrogation. The police report shows that. RE 35-1 at Page ID # 1586-1590, 1595. *See also*, Tr., RE 27-5 at Page ID # 455-457, 472-474. When Horton requested counsel, early in the interrogation, in relation to identifying the murderer, he did not limit his invocation to the identity of *a third party*, as both Appellee and the Michigan Court of Appeals would have this Court believe.

And the five subsequent times that Horton spoke about counsel are consistent with his earlier, unambiguous invocation. The third time, Horton was asked, "specifically how he came to be in possession of [Ahmat's] car[.]" (RE 27-5, Tr. at 23, Page ID# 452.) Horton responded that he did not want to tell the detectives that until he had a lawyer present. *Id*. Although Appellee claims "this was not a request for all questioning to cease until counsel was available," Appl's brief, p. 36, it is consistent with Horton's earlier request to proceed with counsel.

Appellees claim that Horton's sixth mention of counsel, where he stated that "he wanted to talk, talk to his attorney about specifics … had little to do with the crimes at issue." Appl's brief, p. 38. Again, not true. As already set forth in Horton's principal brief on appeal, both this Court and the Supreme Court have found an unambiguous invocation of counsel based upon far less than Horton's statement that "he wanted to talk, talk to his attorney about specifics." *See* Horton's brief on appeal, pp. 18-19.

For the foregoing reasons, Horton was entitled to have all questioning stopped when he first invoked his right to counsel early in the interrogation. The Michigan Court of Appeals unreasonably determined the facts in order to conclude that Horton's invocation was limited, and then applied those unreasonable facts to a body of case law (*Barrett*) that is inapplicable to Horton's circumstances. The decision of the Michigan Court of Appeals drives yet another hole into the protections that *Miranda* warnings are supposed to afford. This Court should find that the state court's decision was unreasonable. Horton is entitled to a writ of habeas corpus.

Finally, Appellees argue that Horton is barred from seeking an alternative form of relief, namely, an evidentiary hearing. Appl's brief, pp. 44-46. In the interest of a full disclosure, and although Appellee did not argue that Horton waived this form of relief, Horton initially advised the federal district court that

providing him the requested police report would obviate the need for an evidentiary hearing. Motion, RE No. 30, PageID #1331-1332. *See also*, RE No. 31, PageID #1339-1340 ("Petitioner asserts that the report will shed light on the facts, show inadequacies in the state court's factual findings, and eliminate the need for an evidentiary hearing on the issue."). However, until Horton received the police report, he would not have known whether that report would provide grounds for an evidentiary hearing. Horton now knows that it does.

The police report shows that Horton's mention of the "homie" did not come up until deep into the interrogation. Report, RE No. 35-1, PageID #1585, 1587-1588. Appellee's brief denies that. Appl's brief, p. 34, fn. 6, 44-45. An evidentiary hearing is warranted on this point and, contrary to what Appellee argues in reference to *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), 28 U.S.C. § 2254(d)(1) or 28 U.S.C. § 2254(e)(2), there is nothing blocking this Court from ordering an evidentiary hearing to flesh out material discrepancies between prior testimony and what was recently discovered in a police report ordered to be produced by a federal district court judge. The Advisory Committee Note for Rule 6(a) states, "Discovery may, in appropriate cases, aid in developing facts necessary to decide whether to order an evidentiary hearing or to grant the writ following an evidentiary hearing . . ." Rules Governing § 2254 Cases, Rule 6(a). The Committee further explains, "While requests for discovery in habeas proceedings

7

normally follow the granting of an evidentiary hearing, there may be instances in which discovery would be appropriate beforehand. . . Such pre-hearing discovery may show an evidentiary hearing to be unnecessary, as when there are 'no disputed issues of law or fact.'" *Id*. This is a case where limited discovery was granted by the district court, which resulted in the production of evidence that shed light on a materially disputed fact. If Horton's facts are true, this would undermine the factual basis for the Michigan Court of Appeals' decision that Horton's second invocation of counsel was limited to identifying a third-party murderer. In any event, this Court has the power to grant any relief that is just and appropriate under the circumstances. *See*, 28 U.S.C. §2106.

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, this Court should reverse the lower court's decision to deny Horton a petition for writ of habeas corpus. The writ should be issued. In the alternative, a remand for an evidentiary hearing is respectfully requested.

> Respectfully submitted,
>
> /s/ Frank J. Lawrence
> Frank J. Lawrence, DC# 1048420
> Law Office of Frank Lawrence
> 941 Westview Road
> Bloomfield Hills, MI 48304
> (248) 722-2560

Dated: January 25, 2023

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this reply brief contains 2,035 words (using Word 2003 word count), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply brief has been prepared in a proportionally spaced typeface using Word 2003 and using 14 point Times New Roman font.

Respectfully submitted,

/s/ Frank J. Lawrence
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant
Rason Horton*

Dated: January 25, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2023, I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court using the CM/ECF System. The CM/ECF System will serve a copy of this brief upon opposing counsel, Ms. Andrea M. Christensen-Brown, at her designed email address: christensena1@michigan.gov.

Respectfully submitted,

/s/ Frank J. Lawrence_____
Frank J. Lawrence, DC# 1048420
Law Office of Frank Lawrence
941 Westview Road
Bloomfield Hills, MI  48304
(248) 722-2560

*Counsel for Petitioner-Appellant Rason Horton*

Dated: January 25, 2023